IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| HENRY SCOTT, IV, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 125-305 |
| | * | |
| UNITED STATES DEPARTMENT OF | * | |
| THE ARMY; DANIEL P. DRISCOLL, | * | |
| Secretary of the Army; and | * | |
| DEFENSE HEALTH AGENCY, | * | |
| | * | |
| Defendants. | * | |

## O R D E R

Presently before the Court are Plaintiff's motion for a preliminary injunction (Doc. 2); motion for temporary restraining order ("TRO") (Doc. 11); motion to withdraw as counsel (Doc. 24); and motion for leave to file pro se during withdrawal of counsel (Doc. 25); as well as Defendants' motion to dismiss (Doc. 18). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED**.[1]

## I. BACKGROUND

Throughout 2025, Plaintiff alleges he was serving on active duty as an officer in the United States Army (the "Army") "under statutory provisions governing continuation of service, retirement eligibility, and sanctuary." (Doc. 2, at 2.) During that time,

---

[1] The Clerk is **DIRECTED** to **TERMINATE** all other pending motions.

he sought clarification on his retirement options with the Human Resources Command ("HRC") of the Army. (Doc. 11, at 2.) Plaintiff alleges HRC stated he was not eligible to retire on active duty and that "his only available option was to submit a DA Form 4187 electing REFRAD." (Id.) REFRAD stands for "Release From Active Duty." (Doc. 2, at 14.) Plaintiff then submitted DA Form 4187 to elect REFRAD, and the Army issued Plaintiff formal retirement orders shortly after submission. (Doc. 11, at 2.) A few days later, the retirement orders were revoked and replaced with REFRAD orders, which effectuated Plaintiff's separation from active duty. (Id.) As Plaintiff understood, electing to REFRAD would not impede his retirement, and he is now facing "unexplained, contradictory agency action taken during sanctuary." (Id.) Sanctuary status under 10 U.S.C. § 12686 requires that:

> [A] member of a reserve component who is on active duty . . . and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system . . . may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary [of the Army].

10 U.S.C. § 12686(a). Plaintiff alleges he was in statutory sanctuary status through October 31, 2025, the date of his transition into reserve status. (Doc. 2, at 3.) In September 2025, Plaintiff submitted two congressional inquiries pertaining to (1) his separation, challenging the legality of his impending retirement, and (2) "unresolved medical care failures arising during Plaintiff's active-duty service." (Id. at 2.)

2

Plaintiff's motion for preliminary injunction includes a letter from an HRC employee providing details about his request for assistance with the Officer Sanctuary Program for Retirement:

> 10 USC, Section 12686, cover[s] both enlisted and officers applying for Sanctuary status. It states, "is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system (other than the retirement system under chapter 1223 of this title), may not be involuntarily released from that duty before he becomes eligible for that pay, unless the release is approved by the Secretary." This section of law does not authorize HRC to extend [Plaintiff] until he reaches 10 years of Active Federal Commissioned Service (AFCS) in December of 2026. Nor can we retire [Plaintiff] as an officer on October 31, 2025 since he will not have the 10 years of service as an officer IAW 10 USC 7311, and it is not subject to a waiver. [Plaintiff] must Release From Active Duty (REFRAD) at the end of his Sanctuary tour. He may then apply for an additional Active Duty Operational Support (ADOS) tour or Worldwide Individual Augmentation System (WIAS) tasking to reach 10 years of AFCS. He would then be able to apply for an AFS retirement. Or he could return to the USAR, resign his commission for the purpose of immediate reenlistment to retire, and would retire as an enlisted Soldier and his retired pay would be calculated in his last enlisted grade held.

(Id. at 14.)  Plaintiff asserts he was improperly separated from the Army "[d]espite unresolved statutory, retirement, and medical matters—and while congressional and agency review remained ongoing," and that "[a]ny purported 'voluntary' separation executed without Secretary-level approval is legally ineffective, because statutory protections cannot be waived through administrative processing or coerced choice."  (Id. at 3.) Plaintiff's complaint and motions detail a history of injuries and medical care for those injuries through October 31, 2025, but after

3

separation, he was "released with all major medical issues still unresolved," which has "left [Plaintiff] without proper continuity of care." (Id. at 16-17.) Plaintiff includes a declaration with his motion, indicating he has "suffered and continue to suffer loss of active-duty status, pay, benefits, and continuity of medical care," and he has "filed an application with the Army Board for Correction of Military Records ["ABCMR"], which remains pending." (Id. at 21.)

Plaintiff filed his complaint and motion for preliminary injunction on December 29, 2025. (Docs. 1, 2.) Plaintiff moved for a TRO on January 21, 2026. (Doc. 11.) Defendants moved to dismiss Plaintiff's complaint on February 4, 2026. (Doc. 18.) Plaintiff responded. (Doc. 20.) Plaintiff then moved to withdraw his attorney and for leave to file pro se during the pending withdrawal of his counsel. (Docs. 24, 25.) The issues are now ripe for the Court's review.

## II. LEGAL STANDARD

Defendants move to dismiss Plaintiff's complaint under Rules 12(b)(1) and 12(b)(6).

### A. Rule 12(b)(1) – Subject Matter Jurisdiction

"Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." Carmichael v. Kellogg, Brown & Root Servs., Inc., 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted). "Facial challenges to

4

subject matter jurisdiction are based solely on the allegations in the complaint[; w]hen considering such challenges, the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true." Id. (citation omitted). "However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits." Id. (citation omitted). Here, Defendants make a facial challenge to the Court's subject-matter jurisdiction over this action. Thus, for the purposes of its analysis, the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in the light most favorable to Plaintiff. See Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). Nevertheless, Plaintiff, as the party invoking the Court's jurisdiction, "bears the burden of proving, by a preponderance of the evidence, facts supporting the existence of federal jurisdiction." See McCormick v. Aderholt, 293 F.3d 1254, 1257 (11th Cir. 2002) (citation omitted).

## B. Rule 12(b)(6) – Failure to State a Claim

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and

the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the - defendant - unlawfully - harmed - me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 677-80. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citation omitted).

## III. DISCUSSION

Defendants' motion seeks dismissal for lack of subject matter jurisdiction and failure to exhaust administrative remedies.

6

(Doc. 18, at 8-14.)   The Court reviews each ground for dismissal below.

## A. Lack of Subject Matter Jurisdiction

Defendants argue that Plaintiff's claims fall under the Tucker Act because (1) Plaintiff seeks a monetary award over $10,000.00; and (2) the Court of Federal Claims could provide appropriate relief.   (Doc. 18, at 9-12.)   Defendants assert that as a result, the Court lacks subject matter jurisdiction, and exclusive jurisdiction lies with the Court of Federal Claims. (Id.)   Plaintiff argues federal question jurisdiction exists because he is challenging agency action that went beyond statutory authority.   (Doc. 20, at 2.)   Additionally, Plaintiff argues his claim falls under the Administrative Procedure Act ("APA"); the claim is for "declaratory and injunctive relief restoring lawful status," not compensatory damages; sovereign immunity is waived under 5 U.S.C. § 702 of the APA for actions seeking relief other than money damages; and Plaintiff's separation was a final agency action under 5 U.S.C. § 704.   (Id. at 2-3.)

"The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." Campbell v. United States, 962 F.2d 1579, 1581 (11th Cir. 1992) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). The United States has waived sovereign immunity for specific types of actions under the Tucker Act.   See 28 U.S.C. § 1491(a)(1) ("The

7

United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States . . . upon any express or implied contract with the United States . . . Army."). The Tucker Act waives sovereign immunity for and grants the Court of Federal Claims exclusive jurisdiction over claims against the United States for damages over $10,000.00. Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev., 480 F.3d 1116, 1121 (Fed. Cir. 2007); Keller v. Merit Sys. Prot. Bd., 679 F.2d 220, 222 (11th Cir. 1982) (per curiam).

To determine whether a claim falls within the scope of the Tucker Act or the APA, a district court must decide whether the "true nature of a plaintiff's claim" is a "claim for money." Suburban Mortg. Assocs., 480 F.3d at 1124. Next, the district court "must determine whether the claim is excluded from APA jurisdiction by the limitations in 5 U.S.C. §§ 702 and 704." Id. The APA waives the United States' sovereign immunity for an action "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." 5 U.S.C. § 702. However, the APA also states that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

The Federal Circuit has held that instead of analyzing whether the plaintiff seeks "money damages" under 5 U.S.C. § 702, "the

better course" is to ask whether the Court of Federal Claims has jurisdiction over the cause under the Tucker Act. Suburban Mortg. Assocs., 480 F.3d at 1125. This analysis starts "with the question raised by 5 U.S.C. § 704—is there an adequate remedy in a court other than the district court," or, "can the Court of Federal Claims provide an adequate remedy under the Tucker Act for the alleged wrong?" Id. (quotations omitted). Answering this question "often will be dispositive." Id.

Because Plaintiff seeks relief that involves "temporarily restoring Plaintiff's active-duty status, with all incidents of that status flowing by operation of law," this Court does not have jurisdiction over Plaintiff's claims. (Doc. 1, at 6); see 28 U.S.C. § 1491(a)(1); McCarthy v. Toro, 678 F.Supp.3d 1148, 1158-59 (M.D. Fla. 2023) (finding no subject matter jurisdiction in district court under 28 U.S.C. § 1491 for Plaintiff's claims of wrongful military discharge, benefits, backpay, and retirement credits, as the claims are within jurisdiction of Court of Federal Claims). Here, the Court of Federal Claims can provide Plaintiff with his requested relief, as it can "issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records," and award monetary relief. 28 U.S.C. § 1491(a)(2). Although Plaintiff states he does not seek money damages in his complaint, he alleges he experienced a "loss of pay and benefits flowing from unlawful separation." (Doc. 1, at 5.) This ties into his request to return

9

to active-duty status "with all incidents of that status flowing by operation of law." (Id. at 6.)  As a result, Plaintiff's pay and benefits relate to his claims for reinstatement and injunctive relief, and thus are "based on the same factual predicate." Keller, 679 F.2d at 222.  Further, granting reinstatement would show that Plaintiff is entitled to an expenditure from the United States Treasury.  See id. at 222-23 ("The district court's resolution of appellee's right to reinstatement effectively disposed of all issues concerning his right to backpay . . . . Hence such adjudication by the district court substantially infringed on the Court of Claims' exclusive jurisdiction over appellee's backpay claim.").  The relief Plaintiff seeks involves reinstatement and ultimately the restoration of "all incidents of that status" such as "pay and benefits," which undisputedly amounts to over $10,000.00, and the Court of Federal Claims can provide an adequate remedy.  (Doc. 1, at 5, 6.)  Therefore, the Court of Federal Claims has exclusive jurisdiction.

Plaintiff argues his separation was a final agency action by the Army, and thus, § 704 is satisfied.  (Doc. 20, at 3.)  Even assuming the Army's action involving Plaintiff's separation was final by definition, "the availability of a remedy in the Court of [Federal] Claims under the Tucker Act has been held to be an adequate remedy" for the purposes of § 704.  Ala. Rural Fire Ins.

10

Co. v. Naylor, 530 F.2d 1221, 1230 (5th Cir. 1976).[2]  For this reason, the Army's action is not subject to judicial review under § 704 and Plaintiff's argument fails.

Lastly, in Toro, a case where the plaintiff "frame[d] his complaint as seeking only declaratory and injunctive relief" although he also requested monetary relief, the court found "[the plaintiff] cannot avoid the limits of the Tucker Act through artful pleading."  658 F.Supp.3d at 1157 (citation omitted).  The Court finds the same principle applies here, as Plaintiff is requesting a reinstatement of active-duty status which would involve monetary consequences.

Based on the above, Defendants' motion is **GRANTED** because the Court lacks jurisdiction over Plaintiff's claims.

## B. Exhaustion of Administrative Remedies

Plaintiff asserts that he has filed an application with the ABCMR, which is pending.  (Doc. 2, at 21.)  Defendants argue that this pending application indicates the complaint was inappropriately filed before Plaintiff exhausted his administrative remedies through the Army.  (Doc. 18, 12-14.) Plaintiff argues there are exceptions to the exhaustion doctrine that apply in his case, including the inadequacy of administrative

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

remedy, irreparable injury, and *ultra vires* conduct. (Doc. 20, at 3-4.)

The ABCMR may "correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). Administrative remedy exhaustion is important in cases involving the military, where the United States Supreme Court has found that "[o]rderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." Orloff v. Willoughby, 345 U.S. 83, 94 (1953). However, there are exceptions to the exhaustion requirement "where no genuine opportunity for adequate relief exists . . . irreparable injury will result if the complaining party is compelled to pursue administrative remedies . . . or an administrative appeal would be futile." Linfors v. United States, 673 F.2d 332, 334 (11th Cir. 1982).

Based on Plaintiff's allegations, he is in the process of proceeding with resolution options within the Army, and therefore, the Court finds it is premature to grant equitable relief when administrative remedies have not been entirely exhausted. The Eleventh Circuit has recognized a two-step test to determine whether internal military matters may be reviewed. Rucker v. Secretary of the Army, 702 F.2d 966, 969-70 (11th Cir. 1983). "The first step requires the court contemplating review to determine whether the plaintiff has alleged that the military acted contrary

12

to the Constitution, applicable statutes, or its own regulations and whether the plaintiff has exhausted his administrative remedies." Id. at 969 (citation omitted). Once the first step is satisfied,

> the court must then balance the substance of the allegations against the policy reasons that militate against review based on four factors: (1) the nature and strength of the plaintiff's challenge to the military function; [] (2) [t]he potential injury to the plaintiff if review were denied; (3) the type and degree of anticipated interference with the military function; and (4) the extent to which the exercise of military expertise or discretion is involved.

Id. at 969-70 (citations omitted) (alterations in punctuation). In Rucker, the court determined Plaintiff exhausted his administrative remedies because he "petition[ed] to the ABCMR requesting the relief sought in this action and receiv[ed] an adverse determination." Id. at 970. Plaintiff's application was filed sometime after his separation on October 31, 2025. (Doc. 18, at 13.) The ABCMR is allotted eighteen months in which the Board shall complete its final action on an application. See 10 U.S.C. § 1557(b). Given that Plaintiff has not shown he has received an adverse determination from the ABCMR and at most six months have passed since he filed his application, his administrative remedies are not exhausted, and the first step is unsatisfied. As a result, his complaint is premature.

The Court also finds the exceptions outlined in Linfors do not apply. 673 F.2d at 334. There is no indication in the complaint that the ABCMR is unable to provide Plaintiff with

13

adequate relief, although Plaintiff later argues the ABCMR cannot provide emergency reinstatement during review. (Doc. 20, at 4.) Plaintiff does not cite authority on the relief options available to the ABCMR, but given its role in correcting military records and removing injustices, the Court finds the ABCMR does have the opportunity to provide adequate relief to Plaintiff as part of its review process. 10 U.S.C. § 1552(a)(1).

Next, it has not been shown that irreparable injury will result if Plaintiff is compelled to pursue administrative remedies. Plaintiff states that "[a]n 18-month delay renders relief hollow," but that is the maximum review time allowed by statute and nearly six months have passed since Plaintiff filed his application. (Doc. 20, at 4); see 10 U.S.C. § 1557(b). Review may not take the entire statutory period provided, and it is unknown if the ABCMR has made a determination because Plaintiff has not provided additional information on the matter. However, it is important to allow the ABCMR its permitted length of time to respond to applications as required. Also, it has not been shown that the ABCMR could not fully remedy Plaintiff's injuries if it determines that an error took place.

Lastly, an administrative appeal is not futile because the ABCMR is tasked with reviewing and resolving administrative issues within the Army such as this. See 10 U.S.C. § 1552(a)(1). The ABCMR appeal procedure is an internal process available to members of the Army for administrative review of potential errors in their

14

official records or other injustices. See id. As such, none of the exceptions to the administrative exhaustion requirement are met; thus, Defendants' motion is **GRANTED**.

## IV. CONCLUSION

Based on the above, the Court does not have subject matter jurisdiction over Plaintiff's claims and Plaintiff has failed to exhaust his administrative remedies. Accordingly, Defendants' motion to dismiss (Doc. 18) is **GRANTED**. The Clerk is **DIRECTED** to **TERMINATE** all pending motions and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 29th day of April, 2026.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

15